# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

**JUDGE BUCHWALT**

| | |
|---|---|
| ANDREW ORLANDER, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*<br><br>v.<br><br>STAPLES, INC.,<br>A Delaware Corporation,<br><br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

13 CV 0703

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Staples Inc.
50 Staples Dr.
Framingham, MA 01702

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: GARDY & NOTIS, LLP
Mark C. Gardy
James S. Notis
Meagan A. Farmer
Jonathan Adler
501 5th Avenue, Suite 1408, New York, NY 10017

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

*CLERK OF COURT*

Date: 01/31/2013

*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 0703

No.

---

ANDREW ORLANDER, Individually
and on Behalf of All Others Similarly
Situated,

Plaintiff,

v.

STAPLES, INC.,
A Delaware Corporation,

Defendant.

---

**CLASS ACTION COMPLAINT FOR
BREACH OF CONTRACT,
VIOLATIONS OF NEW YORK
GENERAL BUSINESS LAW § 349, § 350,
BREACH OF EXPRESS AND IMPLIED
WARRANTIES AND UNJUST
ENRICHMENT**

**JURY TRIAL DEMANDED.**

RECEIVED

JAN 31 2013

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Andrew Orlander ("Plaintiff"), individually and on behalf of all others similarly

situated, by his undersigned counsel, alleges the following upon personal knowledge as to his

own acts and upon information and belief based upon the investigation conducted by counsel as

to all other matters.

## NATURE OF THE ACTION

1.      Plaintiff brings this action individually and as a class action against Staples Inc.

("Staples" or the "Company") on behalf of all others who purchased a Staples Protection Plan (a

"Protection Plan") in conjunction with an in-store purchase at a Staples retail store in New York

State.

2.      Staples is an office products company, selling office supplies and services, office

machines and related products, computers and related products and office furniture. This action

alleges that Staples violated state statutory and common law when selling Protection Plans in

New York State. Staples advertises and sells a series of extended service plans called Protection

Plans in conjunction with the sale of certain retail products including personal computers and other related accessories and electronics.

3.     Staples uses a company-wide proprietary sales tracking system that encourages its sales representatives to sell $200 of extra purchases along with an initial sale of an electronics product (*i.e.,* desktop computer, printer) before the consumer leaves the store. One logical tack-on purchase is a Protection Plan. Protection Plans are advertised and sold to customers either in retail stores through the use of brochure-type pamphlets or online through dedicated webpages. The Protection Plans brochure and dedicated webpage lists in very general bullet-points the coverage and services included as part of the Protection Plan, but does not provide the full terms of the plan. Also, the Protection Plans brochure states that certain restrictions apply to the Protection Plan and directs consumers to review the Terms and Conditions ("Terms and Conditions") section for complete details, including Obligor information describing Staples's responsibility in connection with the Protection Plan. The Protection Plans brochure neither includes the Terms and Conditions nor provides a means of obtaining them. Instead, the brochure includes a URL web address and a toll-free telephone number. By failing to provide access to the Terms and Conditions of the Protection Plan at the time of purchase, defendant Staples and its sales representatives can misstate the contractual terms without fear that a consumer might verify the validity of the sales pitch. Further, consumers are/were unable to understand the scope of coverage offered by the Protection Plan before or even after purchasing it.

4.     In actuality, the Protection Plans do not confer any benefit until after the manufacturer's warranty expires and, therefore, are redundant and have no actual value until expiration of the manufacturer's warranty, which may be as long as one year. Moreover, the

2

Protection Plans are misleading because they are sold by length of coverage (*i.e.,* one year plan or two year plan) yet do not offer coverage until a manufacturer's warranty expires. Furthermore, consumers will likely incur extra costs that they are unaware of in order to take advantage of a manufacturer's warranty. For instance, under the Protection Plan, a customer can choose to carry-in their defective item to Staples's nearest authorized repair center for service or, as an alternative, Staples will provide prepaid shipping to and from its repair facility back to any retail location. Under a manufacturer's warranty, a consumer may be required to pay certain costs associated with the warranty, including packaging and shipping costs. Though Staples aggressively attempts to sell the plan as a tack-on item at the time of sale, a consumer can purchase the plan near or upon expiration of the manufacturer's warranty and not at the time of purchase. Therefore, Staples is essentially preying on consumers to purchase a Protection Plan well before it is usable.

5.    Staples routinely makes its sales pitch for a consumer to purchase a Protection Plan in connection with an item that is coverable under a Protection Plan at the checkout counter. In the instance of Plaintiff's purchase experience at a Staples retail location, defendant presented the Protection Plans brochure to Plaintiff at the checkout counter and then misrepresented the terms of the Protection Plan. Based on defendant's misrepresentations, Plaintiff was convinced that purchasing the Protection Plan in conjunction with his purchase of a computer was a prudent investment. Plaintiff paid for the computer and Protection Plan and was given a receipt along with the Protection Plans brochure. The Terms and Conditions of the Protection Plan were never provided.

6.    As a result of Staples's unlawful course of conduct, Plaintiff and the Class have suffered damages and would not have purchased the Protection Plans had they known the Terms

3

and Conditions of the Protection Plans, which were not disclosed or made available to them before, during or after time of purchase.

7. Plaintiff seeks damages and injunctive relief enjoining Staples from selling the Protection Plan without providing the attached Terms and Conditions.

## THE PARTIES

8. Plaintiff Andrew Orlander is a resident and citizen of the State of New York. Plaintiff purchased a Protection Plan at a Staples retail location in New York State during the relevant time period. Plaintiff was not provided with the Terms and Conditions of the Protection Plan at the time of purchase or any time thereafter, and was unaware that the Protection Plan that he purchased did not provide the coverage averred by the Company's sales representative as alleged herein. Had Plaintiff been given truthful and accurate sales materials representing the terms of the warranty before he purchased his Protection Plan, Plaintiff would not have purchased the Protection Plan.

9. Defendant Staples is incorporated under the laws of the State of Delaware. Defendant's corporate headquarters is located in Framingham, Massachusetts. Staples advertises, distributes, markets and sells its Protection Plans to consumers throughout New York State. According to Staples's 2011 Annual Report, as of January 28, 2012, Staples operated a total of 142 retail stores in New York State.

## JURISDICTION AND VENUE

10. This Court may assert diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and cost, and Plaintiff resides in New York and defendant is a Delaware corporation with its corporate headquarters located in Massachusetts.

4

11.     This Court may also assert diversity jurisdiction of this matter under the Class Action Fairness Act of 2005 in that the aggregate claims of Plaintiff and members of the Class exceed the sum or value of $5,000,000, and diversity of citizenship exists between at least one member of the proposed Class and defendant.

12.     Although defendant is in possession of information demonstrating the exact size of the Class, Plaintiff believes that at least thousands of people purchased a Protection Plan at a Staples retail location in New York State during the relevant time period herein.

13.     This Court has personal jurisdiction over defendant because defendant maintains sufficient contacts in this jurisdiction, including retail stores and the marketing and distribution of the Protection Plans.

14.     Venue is proper in this District because a substantial part of the events and omissions giving rise to the claim occurred in this District, including the marketing, distribution and sale of defendant's Protection Plans in this District.

## SUBSTANTIVE ALLEGATIONS

### *Staples's Sales Tactics*

15.     Staples implements aggressive sales tactics in order to tack on extra sales during a costumer's purchase of a computer or other electronic device. The Company has committed a series of deceptive practices in conjunction with its sales of its brand name service contracts. First, Staples's sales practices have led its employees to misrepresent the terms of the Company's Protection Plan and warranties for products that Staples sells in its stores in order to protect their continued employment. Staples uses a company-wide sales tracking system called Market Basket that tracks how many dollars' worth of add-ons each of its sales representatives sells. The Company requires its sales representatives to sell an average of $200 of add-ons each

5

time they complete a sale of a computer. The Market Basket of each employee is carefully tracked by store management. Sales representatives risk disciplinary action and possible termination if they fail to maintain the $200 average. Furthermore, store managers who fail to keep their storewide Market Basket numbers up face repercussions from upper management. As a result of this practice, Staples employees, fearing poor Market Basket results, make misrepresentations in order to sell the Company's Protection Plan, including misrepresenting the terms of its Protection Plan knowing that the Terms and Conditions are not provided at the time of purchase. Indeed, a Staples employee's performance and job stability is based on how many extra items they can convince a consumer to purchase in conjunction with an initial purchase.

16.    Defendant's standardized process for selling the Protection Plans is deceptive in that the brochure marketed and sold to customers as the Protection Plan references restrictions and Terms and Conditions but fails to provide access to the Terms and Conditions prior to, upon or after sale of the plan.

17.    Various websites that allow people to publish reviews of Staples purchases are replete with accounts of defendant's current or former employees detailing the nefarious sales practices they witnessed or were forced to implement. For instance, one Complaintsboard.com entry stated in part:

> All associates are brainwashed, and pressured into selling extended plans and warranties at all costs. I would never buy a computer with a warranty at Staples, as I have been apart [sic] of the warranty claim process, and literally cringe each and every time I have to be apart [sic] of it...as the computer never comes back fixed, EVER.

Available           at           http://www.complaintsboard.com/complaints/staples-c297294.html?page=2#c1299215 (last visited on January 24, 2013)

6

18.     Defendant improperly markets the Protection Plans with Terms and Conditions yet fails to provide access to the Terms and Conditions either in its store or online before or after purchase. By restricting access to the Terms and Conditions of its Protection Plans, defendant effectively nullified the express contract between itself and Plaintiff and the Class.

*Plaintiff's Transaction*

19.     On March 3, 2012, Plaintiff purchased from defendant: (A) a Hewlett Packard ("HP") Pavilion p7-122 computer; and (B) a Protection Plan described on Plaintiff's receipt as 2yr TSP $500-99 920585. Plaintiff paid $99.99 for the Protection Plan.

20.     Plaintiff made his purchase at defendant's retail store located at 855 Central Park Avenue, Scarsdale, New York 10583.

21.     When he purchased the computer and Protection Plan, Plaintiff was told by a Staples sales representative that the Protection Plan will provide complete coverage so that Plaintiff would never need to contact the manufacturer for repairs or replacement. Plaintiff was assured that if he was having problems with his computer, he would only need to bring the computer to his local Staples store to have the problems resolved. Plaintiff relied on defendant's representations when he purchased the Protection Plan.

22.     On November 21, 2012, Plaintiff sought to exchange his computer after experiencing intermittent internet connectivity issues. He was told by a Staples employee that: (i) the sales representative misrepresented the terms of the Protection Plan; (ii) Plaintiff would need to seek a replacement from the manufacturer directly; and (iii) that there was no coverage from the Protection Plan until the manufacturer's warranty expired.

23.     On January 4, 2013, Plaintiff received in writing, a letter signed by a Staples Sales Manager, stating that Staples would not exchange his computer. Specifically, the letter reads:

7

Staples Protection Plans does not cover the first year, Staples Protection Plans covers the 2nd year when the warranty expires from the manufacturer, In Andrew Orlander [sic] case HP should cover the repair on the HP Desktop, Staples will pick up the second year on his replacement plan.

24.     This letter contradicts the sales representations proffered by Staples when it sold him the extended coverage for two years. In line with its company-wide deceptive sales practices, Staples pressed Plaintiff to purchase the Protection Plan averring the following points:

a.     The manufacturer's warranty will not be sufficient to address issues that arise with the computer;

b.     If the computer exhibits technical problems, pursuant to the manufacturer's plan, Plaintiff will be required to package his computer and ship it back to the manufacturer;

c.     Staples expressly stated to Plaintiff its lack of faith in the manufacturer to acknowledge Plaintiff's computer problems and provide coverage sufficient to fix Plaintiff's computer problems;

d.     If Plaintiff purchased the Protection Plan, Staples would attempt to fix Plaintiff's computer and if it was unable to repair it, it would take it back and give Plaintiff a replacement computer immediately.

25.     Plaintiff was not aware that, in actuality, the Protection Plan was redundant and unnecessary coverage that would not come into effect until HP's manufacturer's warranty expired one year later. Further, Staples was under no requirement to fix or replace Plaintiff's HP computer if it experienced problems during the first year. Thus, at least for the first year of the Protection Plan, Plaintiff spent money for absolutely nothing and defendant took his money without selling anything in return.

8

***Staples Fails to Provide the Terms and Conditions of the Protection Plan***

26.     Staples falsely advertises in its Protection Plans brochure that the Terms and Conditions of the plan are available to customers. Staples sells its service contracts without sharing or even allowing the purchaser to see the Terms and Conditions they are agreeing to. Specifically, the Protection Plan sold to Plaintiff is a three page brochure that provides two short bulleted lists:

### Coverage you can count on.
### Here's what's included:
- 24/7 technical support and customer service
- 100% parts and labor coverage
- Coverage against normal mechanical or electrical failures as a result of normal wear and tear
- One-time replacement or cash settlement if equipment cannot be repaired*
- Power surge coverage of up to $1 ,000 over the life of the Plan
- Transferable coverage

### Types of servies [sic]:
- Carry-in: We will refer you to the nearest authorized repair center for service.
- Express shipping: We will provide prepaid shipping to and from our repair facility.
- On-site: We will do our best to repair your product at your home or workplace. If needed, we will pay for shipping to a designated service provider.

27.     The asterisk at the end of the fourth bullet point directs the Plaintiff to a small paragraph in very small fine print on the bottom of the brochure back cover which reads as follows:

Some restrictions apply. For complete details, including Obligor information, see Terms and Conditions. The plan term is inclusive of manufacturer's warranty and store return policy and does not replace the manufacturer's warranty. Plan does not cover cracked or broken screens and any failure due to accidental damage. Not responsible for lost data. Replacement product can be a new, rebuilt or

9

refurbished one of similar features and functionality. Replacement or cash settlement fulfills the contract in its entirety, except on flat screen monitors.

28. Defendant made its sales pitch for Plaintiff to purchase a Protection Plan at the checkout counter while Plaintiff was attempting to complete his purchase of the HP computer. Based upon defendant's misrepresentations of the terms of the Protection Plan, Plaintiff was convinced that purchasing the Protection Plan in conjunction with the HP computer was a prudent investment. Plaintiff paid for the computer and Protection Plan and was given a receipt along with the Protection Plans brochure described above in detail.

29. Though Staples provides in writing that Plaintiff should "see Terms and Conditions" of the Protection Plan, such Terms and Conditions were not shown to Plaintiff when he was being solicited to buy the Protection Plan. Also, Plaintiff was not given a copy of the Terms and Conditions or directions to access a copy of the Terms and Conditions after purchasing the Protection Plan. Further, upon investigation, Staples was unable to provide a copy of the Terms and Conditions to Plaintiff either in print or online.

30. Plaintiff has fallen victim to multiple instances of misdirection by employees of Staples while attempting to obtain the elusive Terms and Conditions associated with the Protection Plan he purchased. The following attempts occurred on December 20, 2012:

a. First, Plaintiff unsuccessfully attempted to locate the Terms and Conditions at the URL provided on the Protection Plans brochure[1];

---

[1]     See http://staples.com/protectionplans (Last visited on January 24, 2013).

10

b. Next, upon requesting the Terms and Conditions by calling the toll-free number provided on the Protection Plan, Plaintiff was directed to a URL that directed him to the same URL listed on the Protection Plans brochure;

c. Then, Plaintiff initiated a chat session[2] from the website provided on the Protection Plans brochure in order to ask a Staples representative where to obtain the Terms and Conditions. The following conversation occurred:

*GoToAssist()*
Your representative has arrived.

*Staples Representative*
Thank you for contacting Staples Technical Support Chat, my name is Joseph. I will be happy to assist you today. Unfortunately, *all terms and conditions would only be able to be provided by your local Staples store.* Did you have any questions?

*Plaintiff*
I purchased a pcmoputer [sic] and a plan

*Plaintiff*
it says on the plan brochure that I should see terms and conditions

*Plaintiff*
those were not provided in the store

*Plaintiff*
or the brochure

*Plaintiff*
where can I read them

---

[2]     See     https://esolutions.assurant.com/Home/Welcome/9f167e85-1149-43eb-a1e8-43fcb94a0bd8#citrix-chat (Last visited on January 24, 2013).

11

*Plaintiff*

?

*Staples Representative*

Thank you. I do apologize, *the Store has a single brochure with the terms and conditions for every service plan. You must get that brochure from the store. It is not available anywhere else.* Did you have any other questions?

*Plaintiff*

I do not live in the same area I purchased the computer and plan. Can I get a copy of the terms and conditions from any store?

*Staples Representative*

That is correct.

*Plaintiff*

just to make sure I cover my bases

*Plaintiff*

*have the terms and conditions of the protection plans changed since March, 2012?*

*Staples Representative*

Thank you. *The plan you purchase carry the same terms and conditions.* It is only updated for new plans sold. We did roll out with new complete care plans, any changes would be for those plans only.

*Plaintiff*

great. thanks for your help. Are you sure that I cannot access a version of the Terms and Conditions online....anywhere? That seems strange...

*Staples Representative*

That is correct. I do apologize for the inconvenience, however we no longer offer the option of viewing terms and conditions online. If there is nothing else, then I thank you for using Staples Technical Support Chat. Please return to www.staplesesp.com for future support needs. After you close this window, you will be directed to a brief 'Customer Survey'. We would appreciate if you took the time to complete the survey. Have a good day!

12

*Plaintiff*
okay. thank you

*GoToAssist*
Plaintiff's Representative has left the session.

Emphasis added.

31.    Upon further investigation, Plaintiff sought a copy of the brochure with the Terms and Conditions for every service plan ("T&C Brochure") at a Staples store located at 442 5th Avenue New York, New York 10018. An Easy Tech Resident was asked for a copy of the T&C Brochure. The Easy Tech Resident searched around, was unable to find it and asked a Manager. The Easy Tech Resident and the manager quickly went into a restricted back area and came back without the T&C Brochure. Neither the manager nor the Easy Tech Resident told Plaintiff directly that they were unable to provide the T&C brochure. After approaching the Manager directly about obtaining a copy of the Terms and Conditions, the Manager said that the plan had recently changed and they no longer had copies of the old plan. Upon requesting the Terms and Conditions applicable to the new plan instead the Manager went into the back and did not return. Instead, the Manager asked the Easy Tech Resident by phone to convey that he was unable to locate a copy of the new Terms and Conditions.

32.    Defendant represented that the Terms and Conditions were available to view upon purchase of the plan. Defendant knew or should have known that such Terms and Conditions were in fact not provided to purchasers of the Protection Plan. As a result of defendant's company-wide deceptive practices, Plaintiff and members of the Class have been damaged by paying for a Protection Plan they would not have purchased. Plaintiff suffered damages as a result of defendant's company-wide misstatements concerning the Protection Plans.

13

33. A "pissedconsumer.com" internet website posting highlighted Staples's practice of misrepresenting the Terms and Conditions of its Protection plan. The consumer, who posted the complaint on January 10, 2010, also purchased a computer at a Staples in New York State captioned his/her complaint as "staples associates lying about technical support and protection plans":

> When I purchased my TSPP 3yr plan in 2010, I was assured that if a problem were to occur I could bring my laptop back to the store's technical service center.That [sic] assurance was very important to me.
>
> Based upon that assurance I purchased the plan. 18 months into the plan a problem occurs, I present my laptop to the center and they informed me that they cannot service my laptop. I must call a 1-866 # for help. My complaint to the store manager regarding his associates [sic] assurance fell on deaf ears as he said he was only the manager for less than 18 months.
>
> My five days of calls and messages to the regional manager were not returned.I [sic] vow to never do business with Staples again.

Available at http://staples.pissedconsumer.com/staples-associates-lying-about-technical-support-and-protection-plans-20120110287869.html (Last visited on January 24, 2013).

34. Another "pissedconsumer.com" internet website posting captioned "Staples Technical Support and Protection Plan – Useless" highlighted Staples's practice of misrepresenting the Terms and Conditions of its Protection plan:

> I purchased an HP laptop in 2009 at Staples, and purchased a 4-year protection plan.I [sic] contacted them today as I am having problems.
>
> The customer service person told me that Staples has the "right" to offer a referral to an authorized repair center as they see fit. And, by the way, they don't offer that service for laptops. They offer no diagnostic services other than a talk with a customer service rep, who will tell you that you are on your own. I asked to talk

with a supervisor, and the rep yawned and said, sure, but he'll tell you just what I told you.

The supervisor sounded half asleep and offered me NO help. So, you can't take your computer in to a service center as they have none for laptops. And, you can't ship it to them as they won't authorize it. And, you can't take it to another repair shop as it invalidates the plan, which is useless anyway.

Available at http://staples.pissedconsumer.com/staples-technical-support-and-protection-plan-useless-20101226213236.html (Last visited on January 24, 2013).

35.     Yet another "pissedconsumer.com" internet website posting captioned "Staples Protection Plan totally useless", published on January 4, 2011 complained of the alleged misrepresentations in connection with the purchase of a printer:

I purchased the extended warranty on a printer, based on the salesperson's statements to me that if I had a problem with the printer I could bring it back to the store for an immediate replacement. As I was purchasing the printer for my home office, and did not want to be without a printer if it broke, this sounded like a reasonable option. I purchased the two year "Date-of-Purchase, Technical Support & Protection Plan" for $29.99. When I had problems with the printer six months later, and could not fix the problem using telephone tech-support, I attempted to exchange the printer at the store. The store manager refused to abide by the terms of the warranty as they had been explained to me. When I questioned the manager and a salesperson about what the salespeople were telling their customers; I was told to leave the store or be arrested. I chose to leave the store and conduct my own investigation into what the Staples salespeople are telling customers to get them to buy the extended warranties.

I posed as someone interested in purchasing a printer and visited six Staples stores in the Denver area, two in the Orlando area, and five in the Portland, Oregon area. I found that all the salespeople misrepresented what the true terms and conditions of the extended warranty were. If it had been a small percentage of salespeople misrepresenting the terms and conditions; it may have indicated improper conduct on the part of individuals. However, when the sales pitch misrepresenting the terms and conditions is detailed and consistent from Orlando to Denver to Portland; it is my opinion that this represents a pattern of a business intentionally trying to mislead or defraud its customers.

15

Available at http://staples.pissedconsumer.com/staples-lies-about-terms-of-extended-warranty-20110104214655.html (Last visited on January 24, 2013).

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3) on behalf of the following consumer class (the "Class"):

All purchasers of a Staples Protection Plan in New York State from February 1, 2010 to the present (the "Class Period"). Excluded from the Class are defendant, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

37. Members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff estimates that there are thousands of members of the Class.

38. Questions of law and fact are common to all the members of the Class that predominate over any questions affecting only individual members, including:

a. Whether the Company failed and continues to fail to provide the Terms and Conditions of the Protection Plan;

b. Whether defendant failed to fulfill its obligations under the terms of Protection Plan;

c. Whether defendant and its employees misrepresented the terms of the Protection Plan in order to effectuate sales;

d. Whether the Terms and Conditions of the Protection Plan actually exist; and

16

e.     Whether the members of the Class have damages and, if so, the extent of such damages and/or the nature of the equitable injunctive relief or statutory damages to which each Class member is entitled.

39.     The claims of Plaintiff are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class, and Staples has no defenses unique to the Plaintiff.

40.     Plaintiff will protect the interests of the Class fairly and adequately, and Plaintiff has retained attorneys experienced in complex class action litigation.

41.     A class action is superior to all other available methods for this controversy because:

a.     The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

b.     The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for defendant;

c.     Defendant acted or refused to act on grounds generally applicable to the Class; and questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

17

## COUNT I
### (Breach of Contract)

42.     Plaintiff incorporates and re-alleges all of the foregoing paragraphs.

43.     Plaintiff entered into a contract with defendant pursuant to the Protection Plan's purported Terms and Conditions as described in the brochure, which is the only contract Plaintiff has from defendant.

44.     By either failing to provide the Terms and Conditions to Plaintiff and the Class, or misrepresenting the Terms and Conditions of the Protection Plans, defendant did not provide services under the Protection Plans.

45.     As a result of defendant's breach of contract, Plaintiff and the other members of the Class were damaged.

## COUNT II
### (Violation of the New York General Business Law §349)

46.     Plaintiff incorporates and re-alleges all of the foregoing paragraphs.

47.     At all times relevant herein, the New York General Business Law ("GBL") was in effect. GBL §349 prohibits materially misleading, consumer-oriented business acts that cause injury to the Plaintiff. The deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances.

48.     Defendant was and is doing business in the State of New York and thus is subject to New York law for the incidents described in this action.

49.     Defendant's deceptive practices have caused consumers, including Plaintiff, to purchase the Protection Plans.

18

50.     Defendant's acts and omissions of material fact in selling the Protection Plans were misleading.

51.     As a result of defendant's acts, Plaintiff and members of the Class purchased a Protection Plan they would not have purchased had this material information been disclosed.

52.     Defendant thus violated GBL §349 through its actions described above.

53.     Accordingly, Plaintiff and the other members of the Class were damaged when they paid for the misrepresented Protection Plans.

## COUNT III
### (Violation of New York GBL §350)

54.     Plaintiff incorporates and re-alleges all of the foregoing paragraphs.

55.     At all times relevant herein, the New York General Business Law was in effect. GBL §350 prohibits materially misleading, consumer-oriented business acts that cause injury to the Plaintiff. The deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances.

56.     Defendant was and is doing business in the State of New York and thus is subject to New York law for the incidents described in this action.

57.     Defendant's advertisements were false and misleading in a material respect and thus defendant has violated GBL §350.

58.     Plaintiff and the other members of the Class have been injured by the defendant's false advertising.

## COUNT IV
### (Breach of Express and Implied Warranties)

59.     Plaintiff incorporates and re-alleges all of the foregoing paragraphs.

19

60. Plaintiff brings this claim individually and on behalf of members of the Class.

61. Defendant expressly warranted that the Protection Plan was limited by certain restrictions as stated in the purported Terms and Conditions of the Protection Plans.

62. Defendant knew or should have known that the Protection Plans were invalidated as a result of its actions including failing to provide access to the Terms and Conditions for its Protection Plans and misrepresenting the purported Terms and Conditions to Plaintiff and the Class.

63. Plaintiff and the other members of the Class were injured as a direct and proximate result of defendant's breach because they paid for the Protection Plan based on the deceptive advertising and false promises of defendant.

## COUNT V
### (Unjust Enrichment)

64. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

65. Plaintiff further pleads in the alternative, a claim for unjust enrichment.

66. Plaintiff brings this claim individually and on behalf of members of the Class.

67. Defendant's deceptive practices have caused consumers, including Plaintiff, to purchase the Protection Plan.

68. As an alternative, in the event it is determined that no contract existed with respect to the Protection Plans, Plaintiff and the other members of the Class are entitled to damages based on defendant's unjust enrichment.

69. Plaintiff and the other members of the Class would not have purchased the Protection Plan but for defendant's material misrepresentations.

20

70. Defendant was enriched by its deceptive acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.    Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as the Class representative, and appoint the undersigned as class counsel;

B.    Order defendant to pay Plaintiff and other members of the Class an amount of actual and statutory damages, restitution and treble damages in an amount to be determined at trial;

C.    Issue a permanent injunction or other appropriate equitable relief required;

D.    Issue an order granting Plaintiff's reasonable costs and attorney's fees; and

E.    Grant in favor of Plaintiff and the Class such other relief as may be just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury.

DATED: January 31, 2013

**GARDY & NOTIS, LLP**

By:_____

Mark C. Gardy
James S. Notis
Meagan A. Farmer
Jonathan Adler
501 Fifth Avenue, Suite 1408
New York, New York 10017
Tel: (212) 905-0509
Fax: (212) 905-0508

*Attorneys for Plaintiff*

21

OF COUNSEL:

**BALKIN & EISBROUCH, LLC**
David L. Eisbrouch
50 Main Street
Hackensack, New Jersey 07601
Tel: (201) 342-5545
Fax: (201) 342-3211

Court Name: District Court
Division: 1
Receipt Number: 465401059014
Cashier ID: Lcurtis
Transaction Date: 01/31/2013
Payer Name: J ADLER
-------------------------------------
CIVIL FILING FEE
 For: J ADLER
 Amount:          $350.00
-------------------------------------
CREDIT CARD
 Amt Tendered:  $350.00
-------------------------------------
Total Due:       $350.00
Total Tendered:  $350.00
Change Amt:      $0.00

13CV703 NRB