UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW ORLANDER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STAPLES, INC., a Delaware Corporation,<br><br>Defendant. | No. 13-cv-0703-NRB<br><br>ECF Case |

**DECLARTION OF MEAGAN A. FARMER IN SUPPORT OF
PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE
COURT'S SUBJECT MATTER JURISDICTION OVER THE ACTION**

MEAGAN A. FARMER, an attorney duly admitted to practice law in the State of New York, makes the following declaration, pursuant to 28 U.S.C. § 1746, under penalty of perjury:

1. I am a partner of Gardy & Notis, LLP, attorneys for plaintiff Andrew Orlander ("Plaintiff"). I am fully conversant with the facts and circumstances set forth herein. This declaration is submitted in support of Plaintiff's memorandum of law motion demonstrating that this Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332.

**Procedural Background**

2. Plaintiff filed his complaint on January 31, 2013. Plaintiff asserts claims for: (i) breach of contract; (ii) violation of the New York General Business Law §349; (iii) violation of New York General Business Law §350; (iv) breach of express and implied warranty; and (v) unjust enrichment.

3. On May 20, 2013, the parties appeared before the Court for a pre-motion conference concerning Defendant's anticipated motion to dismiss the complaint. During that pre-motion conference, the Court questioned whether it had subject matter jurisdiction over this action under CAFA. At that time, counsel for Staples represented to the Court that Staples had sold 1.2 million Protection Plans in New York during the Class Period, which plans range in price from $14.99 to $349.99.

4. On May 28, 2013, the Court entered an Order directing Plaintiff to submit a memorandum of law demonstrating that the Court has subject matter jurisdiction over this action. *See* Docket No. 8.

**The Allegations in the Complaint Satisfy CAFA's Amount in Controversy Requirement**

5. Plaintiff brought this action on behalf of himself and "all others who purchased a Staples Protection Plan in conjunction with an in-store purchase at a Staples retail store in New York State." Complaint ¶1. Plaintiff seeks damages and injunctive relief enjoining Staples from selling the Protection Plan because the plans "do not confer any benefit until after the manufacturer's warranty expires and, therefore, are redundant and have no actual value until the expiration of the manufacturer's warranty," and because they "are misleading because they are sold by length of coverage … yet do not offer coverage until a manufacturer's warranty expires." *Id*. at ¶4. Plaintiff alleges he and the putative class have been damaged by paying for a Protection Plan they would not have purchased had they known the Terms and Conditions of the Protection Plans at the time of purchase. *Id*. at ¶¶6, 32. Plaintiff paid $99.99 for his Protection Plan. *Id*. at ¶19.

6. Plaintiff further alleges "at least thousands of people purchased a Protection Plan at a Staples retail location in New York during the relevant time period," acknowledging that

Defendant is in possession of information demonstrating the exact size of the Class. *Id*. at ¶12. However, Defendant has provided a more certain number of class members, informing Plaintiff and the Court that approximately 1.2 million Protection Plans were sold by Staples to New York consumers during the Class Period.

7. Based on these facts and allegations, assuming that Plaintiff's payment of $99.99 for the Protection Plan represents the average actual damages of each member of the putative class, the aggregate actual damages of the putative class amounts to $119,988,000 ($99.99 x 1,2000,000), an amount well in excess of CAFA's minimum jurisdictional threshold.

8. Even assuming damages for just one year of the Protection Plan, or half of the price of the Protection Plan of $99.99 ($50), the aggregate damages of the putative class would amount to $60 million.

9. The Protection Plan brochure referenced in the Complaint identifies two and three year plans, ranging in price from $14.99 to $349.99, which results in a median of $142.89. A copy of the Protection Plan brochure provided to Plaintiff by Defendant is attached hereto as Exhibit A. Assuming that median number, a class consisting of just 34,992 members would satisfy the jurisdictional amount under CAFA. (34,991.95 x 142.89 = 5,000,000). This amount is less than 7% of the 1.2 million plans Staples claims it sold in New York State during the Class Period.

10. Similarly, assuming that Plaintiff's $99.99 Protection Plan represents the average actual damages of each member of the putative class, a class of just 50,005 members would satisfy CAFA's jurisdictional amount in controversy requirement (50,005 x 99.99 = 5,000,000). That is less than 4.2% of the 1.2 million Protection Plans sold by Staples in New York during the Class Period.

11. Alternatively, assuming the average damages of the putative class members to be similar to Plaintiff's alleged damages of $99.99, and assuming damages only occurred in year one of the Protection Plan and thus half of the purchase price of the Plan applied ($50), then a class consisting of 100,000 would satisfy CAFA's jurisdictional minimum threshold. (5,000,000/50 = 100,000). That is just 8.33% of the 1.2 million Protection Plans sold by Staples in New York during the Class Period.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2013

                                       *s/Meagan Farmer*
                                       MEAGAN A. FARMER