UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ANDREW ORLANDER, individually and on
behalf of all others similarly situated,

                Plaintiff,

        - against -

STAPLES, INC.,

                Defendant.
----------------------------------------X

**MEMORANDUM AND ORDER**

13 Civ. 703 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


On January 31, 2013, plaintiff Andrew Orlander ("plaintiff") filed this putative class action against defendant Staples, Inc. ("Staples") on behalf of himself and all others who purchased a Staples Protection Plan in conjunction with an in-store purchase at a Staples retail store in New York State on or after February 1, 2010. Plaintiff alleges that Staples's failure to provide the services advertised in Protection Plan brochures and promised by sales staff, combined with its failure to furnish customers with the terms and conditions of the Protection Plan, constitutes breach of contract, breach of express and implied warranties, deceptive practices and false advertising in violation of New York General Business Law ("N.Y. GBL") §§ 349 and 350, and unjust enrichment. Presently before the Court is Staples's

motion to dismiss the Complaint.  Oral argument was held on the motion on June 3, 2014.[1]  For the reasons set forth below, we grant Staples's motion to dismiss.

## BACKGROUND

The following facts are drawn from the Complaint and are assumed to be true for the purposes of the motion to dismiss.[2]  See Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006).  We also consider any statements or documents incorporated into the Complaint by reference and documents upon which plaintiff relied in bringing the action.[3]  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

On March 3, 2012, plaintiff visited a Staples retail store in Scarsdale, New York and purchased a Hewlett Packard Pavilion p7-122 desktop computer for $509.99.  Compl. ¶¶ 19-20.  Although the computer came with a one-year manufacturer's

---

[1] References preceded by "Tr." refer to the transcript of oral argument.

[2] While the following facts are derived primarily from the Complaint ("Compl."), we also cite to the Terms and Conditions of the Protection Plan plaintiff purchased, which is attached as Exhibit A to the Declaration of Barry M. Kazan in Support of Staples's Motion to Dismiss ("Kazan Decl.") (ECF No. 18), and the Protection Plan brochure plaintiff received from Staples, which is attached as Exhibit A to the Declaration of Meagan A. Farmer in Support of Plaintiff's Memorandum of Law in Support of the Court's Subject Matter Jurisdiction Over the Action ("Farmer Decl.") (ECF No. 10).

[3] However, before materials outside the record may become the basis for dismissal, at least two conditions must be met.  First, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).  Second, "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  Id.

warranty, plaintiff also purchased a two-year extended service plan, known as a Staples Protection Plan, for $99.99. Id. ¶¶ 2, 19, 25. At the time of purchase, plaintiff was persuaded by a sales representative that supplementing the manufacturer's warranty with the Protection Plan was a prudent investment. Id. ¶ 5. Specifically, plaintiff was told that: (1) the manufacturer's warranty would not be sufficient to address problems that could arise with the computer; (2) in order for the manufacturer to fix any problems, he would have to ship the computer directly to the manufacturer; (3) if he bought the Staples Protection Plan, he could simply bring his computer to his local Staples store and Staples would resolve any problems; and (4) the Protection Plan would provide complete coverage so that plaintiff would never need to contact the manufacturer for repairs or replacements. Id. ¶¶ 21, 24.

The sales representative also provided plaintiff with a brochure describing the basic features of the Protection Plan. This description consisted of the following bullet points:

> **Coverage you can count on.**[4]
> **Here's what's included:**
> - 24/7 technical support and customer service
> - 100% parts and labor coverage
> - Coverage against normal mechanical or electrical failures as a result of normal wear and tear

---

[4] Bolded emphasis in original.

- One-time replacement or cash settlement
  if equipment cannot be repaired*
- Power surge coverage of up to $1,000
  over the life of the Plan
- Transferable coverage

**Types of servies** [sic]**:**
- Carry-in: We will refer you to the
  nearest authorized repair center for
  service.
- Express shipping: We will provide
  prepaid shipping to and from our repair
  facility.
- On-site: We will do our best to repair
  your produce at your home or workplace.
  If needed, we will pay for shipping to
  a designated service provider.

Id. ¶ 26.  Below this description was a list of prices for the
Protection Plan.[5]  Prices varied based on: (1) the price of the
computer; (2) the length of coverage (either two or three
years); and (3) the type of coverage (either carry-in service
or express shipping/on-site service).  Farmer Decl., Ex A.  The
Protection Plan plaintiff purchased, identified as product
number 920585, cost $99.99 and provided two years of carry-in
service, meaning it entitled him to be "refer[red] . . . to the
nearest authorized repair center for service."[6]  Id.; Compl. ¶
19.

_____

[5] At the top of plaintiff's brochure, above the list of prices, was a hand-
written phone number for Hewlett Packard consumer products support.  Farmer
Decl., Ex A.
[6] Therefore, although plaintiff "was assured that if he was having problems
with his computer, he would only need to bring the computer to his local
staples store to have the problems resolved," Compl. ¶ 21, the brochure
itself made clear that Staples's involvement in the service process was
limited to referring plaintiff to a nearby authorized repair center.

Critical to the instant litigation was the asterisk at the end of the brochure's fourth bullet point. It directed the reader to a paragraph written in fine print on the back cover of the brochure stating:

> *Some restrictions apply. For complete details, including Obligor information, see Terms and Conditions. The plan term is inclusive of manufacturer's warranty and store return policy and does not replace the manufacturer's warranty. Plan does not cover cracked or broken screens and any failure due to accidental damage. Not responsible for lost data. Replacement product can be a new, rebuilt or refurbished one of similar features and functionality. Replacement or cash settlement fulfills the contract in its entirety, except on flat screen monitors.

Compl. ¶ 27.

Although referenced in the brochure, the Terms and Conditions were not provided to plaintiff at the time he purchased the Protection Plan. _Id._ ¶¶ 16, 18. However, several months later, he attempted to obtain them by searching the Staples website, contacting customer service representatives on the phone and online, and visiting a Staples store in Manhattan. _Id._ ¶¶ 29-31. Each attempt proved unsuccessful. _Id._

A copy of the Terms and Conditions was submitted to the Court by Staples in connection with its motion to dismiss the

Complaint. These Terms and Conditions include the following provision:

> THIS PLAN IS INCLUSIVE OF THE MANUFACTURER'S WARRANTY; THIS PLAN DOES NOT REPLACE THE MANUFACTURER'S WARRANTY. THIS PLAN BEGINS WITH THE DATE OF PURCHASE EXCEPT FOR FLAT SCREEN MONITORS AND COPIERS (SEE FLAT SCREEN MONITOR AND COPIER COVERAGE SECTIONS BELOW FOR DETAILS). During the manufacturer's warranty period, the manufacturer is responsible for items covered under its express warranty; and We will pay for other covered items herein, not covered by the manufacturer's warranty.

Kazan Decl., Ex. A.[7]

Thus, the Terms and Conditions of the Protection Plan reiterated and clarified the fine print in the brochure which stated that "[t]he plan term is inclusive of manufacturer's warranty . . . and does not replace the manufacturer's warranty." Under the Protection Plan, because plaintiff's computer was covered by a one-year manufacturer's warranty, Hewlett Packard, not Staples, was responsible for services covered under its warranty during the first year he owned the computer.[8] Plaintiff discovered this when he sought to exchange

---

[7] The Terms and Conditions also include an arbitration clause which provides: "Any and all Claims, disputes, or controversies of any nature whatsoever (whether in Plan, tort or otherwise, (whether by misrepresentation or by omission arising out of, relating to, or in connection with (1) this Plan or any prior Plan, and the purchase thereof; and (2) the validity, scope, interpretation, or enforceability of this Provision or of the entire Plan ('Claim') [sic], shall be resolved by binding arbitration before a single arbitrator." Kazan Decl., Ex. A.

[8] Notably, plaintiff was not required to purchase the Protection Plan at the same time he bought his computer. Indeed, he could have waited for the

the computer at a Staples store on November 21, 2012. Compl. ¶ 22. After explaining to a Staples employee that his computer was having problems connecting to the internet, the employee informed him that he would need to contact Hewlett Packard because the computer was still under the manufacturer's warranty. Id. On January 4, 2013, upon plaintiff's request, a Staples sales manager wrote plaintiff a letter reiterating that Staples would not replace his computer and explaining that the Protection Plan covered only "the 2nd year when the warranty expires from the manufacturer." Compl. ¶ 23. Although the Complaint does not mention whether plaintiff sought to have Hewlett Packard repair or replace his computer, plaintiff's counsel conceded at oral argument that he did not. Tr. 14.

On January 31, 2013, plaintiff brought this putative class action alleging breach of contract, breach of express and implied warranties, deceptive practices and false advertising in violation of N.Y. GBL §§ 349 and 350, and unjust enrichment. He claims that he and the putative class have been damaged by paying for services that, unbeknownst to them, were valueless until after the manufacturer's warranty expired. He contends that had he seen the Terms and Conditions of the Protection

_____

manufacturer's warranty to expire before purchasing the Protection Plan. Compl. ¶ 4. Plaintiff claims that he purchased the Protection Plan when he bought the computer because of the sales representative's aggressive and misleading sales pitch. Id. ¶ 5. Plaintiff further claims that Staples pressures its sales representatives to employ aggressive and misleading sales tactics in order to sell more Protection Plans. Id. ¶¶ 3, 15.

Plan and known that Staples was not responsible for services covered under the manufacturer's warranty, he would not have purchased the Protection Plan. Therefore, he seeks damages and an order enjoining Staples from selling the Protection Plan without attaching the Terms and Conditions.

On February 11, 2014, Staples moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(3) and 12(b)(6). Plaintiff filed his opposition on March 18, 2014, and Staples submitted its reply on April 1, 2014. Oral argument was held on June 3, 2014.

## DISCUSSION

## I. Motion to Dismiss Under Rule 12(b)(3)

First, Staples moves to dismiss the Complaint under Rule 12(b)(3) for improper venue because the Terms and Conditions of the Protection Plan contained a binding arbitration clause. "[A]n arbitration clause is merely a specialized type of forum selection clause." Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 n.2 (2d Cir. 1993). "In determining whether to dismiss a claim based on a forum selection clause, the district court must view all the facts in the light most favorable to the party claiming that venue is proper, while no disputed fact should be resolved against that party until it has had an opportunity to be heard." TradeComet.com LLC v. Google, Inc.,

435 Fed. Appx. 31, 33 (2d Cir. 2011) (internal quotation marks omitted).

The Federal Arbitration Act ("FAA") requires the enforcement of an arbitration agreement between parties engaged in interstate commerce. See 9 U.S.C. § 2; Fensterstock v. Educ. Fin. Partners, 611 F.3d 124, 132 (2d Cir. 2010), vacated on other grounds by Affiliated Computer Servs., Inc. v. Fensterstock, 131 S. Ct. 2989 (2011). "Congress' purpose in enacting the FAA 'was to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" Fensterstock, 611 F.3d at 132 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)) (alteration in original). A court must interpret and construe an arbitration agreement, but only where one is "validly formed" and "legally enforceable." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 300 (2010). As with all contracts, "[a]rbitration is strictly a matter of consent," id. at 299 (internal quotation marks omitted), and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation marks omitted).

Here, plaintiff alleges that he was never presented with the Terms and Conditions when he purchased the Protection Plan, and was denied access to them when he sought them out months later. Viewing the facts in the light most favorable to plaintiff, we hold that he lacked reasonable notice of the Terms and Conditions, and thus never consented to the arbitration clause contained therein. See Schnabel v. Trilegiant Corp., 697 F.3d 110 (2d Cir. 2012) (denying defendants' motion to compel arbitration where plaintiff lacked inquiry notice of the arbitration provision); Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), aff'd 380 F. App'x 22 (2d Cir. 2010) (refusing to enforce arbitration provision where plaintiff "lacked notice of the Terms and Conditions because the website did not prompt her to review the Terms and Conditions and because the link to the Terms and Conditions was not prominently displayed so as to provide reasonable notice of the Terms and Conditions"). Therefore, Staples's motion to dismiss the Complaint under Rule 12(b)(3) is denied.

## II. **Motion to Dismiss Under Rule 12(b)(6)**

Staples also moves to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the

complaint and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, 493 F.3d at 98; Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "[f]actual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). Ultimately, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. If plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (internal quotation marks omitted).

A.  Breach of Contract

To state a claim for breach of contract under New York law, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011).

Here, plaintiff alleges that he and Staples entered into a contract when he purchased the Protection Plan, and that this contract consisted solely of the brochure and, to the extent

11

they help elucidate the brochure, the oral representations of the sales representative. Pl. Opp. at 8; Compl. ¶ 43 ("Plaintiff entered into a contract with defendant pursuant to the Protection Plan's purported Terms and Conditions as described in the brochure, which is the only contract Plaintiff has from defendant."). Plaintiff claims that Staples breached this contract by refusing to provide the services promised in the brochure during the first year of the Protection Plan. Pl. Opp. at 8.

Because we assume, as we must at this stage, that the Terms and Conditions of the Protection Plan "were not disclosed or made available to [plaintiff] before, during or after [the] time of purchase," Compl. ¶ 27, we limit our analysis of the contract to the brochure. See, e.g., Sanbrook v. Office Depot, Inc., 2008 U.S. Dist. LEXIS 40322, at *18-19 (N.D. Cal. May 5, 2008) (holding that "the brochure may have formed the basis of the contract between Office Depot and Sanbrook" where terms and conditions were only available online); Schacter v. Circuit City Stores, Inc., 433 F. Supp. 2d 140, 143 (D. Mass. 2006) (noting that "money now, terms later" contracts are only enforceable when "the purchaser has a clear opportunity to consult those terms and return the product for a refund if he or she is dissatisfied with the conditions of sale"). Indeed, although the doctrine of incorporation by reference allows for

a contract to include terms and conditions provided in a separate document, "[t]hat rule of law is grounded on the premise that the material to be incorporated is so well known to the contracting parties that a mere reference to it is sufficient." Chiacchia v. National Westminster Bank, 124 A.D.2d 626, 628 (N.Y. App. Div. 1986); cf. Faulkner v. Beer, 463 F.3d 130, 135 (2d Cir. 2006) (holding that "if a plaintiff had not received a copy of either Offering Memorandum, then that plaintiff's claims could not be dismissed based on warnings of risk in those documents").

Thus, viewing the brochure as the contract, we begin our analysis by determining whether Staples failed to perform the services it promised. Because plaintiff purchased the "carry-in" service option, he was entitled, according to the brochure, to be "refer[red] . . . to the nearest authorized repair center for service." Plaintiff argues that Staples breached this provision by refusing to fix his computer when it experienced problems connecting to the internet in November 2012. Staples counters that this was not a breach because, under the language of the brochure -- specifically the clause stating that "[t]he plan term is inclusive of manufacturer's warranty . . . and does not replace the manufacturer's warranty" -- Staples was not responsible for servicing the computer while the manufacturer's warranty was still in effect. Plaintiff

disputes this interpretation and emphasizes that the sales representative led him to believe that Staples would be responsible for servicing his computer during the manufacturer's warranty period.

"Whether or not a writing is ambiguous is a question of law to be resolved by the courts." W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162 (N.Y. 1990). A writing is ambiguous if its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 173 (2d Cir. 2004) (internal quotation marks omitted). Although the language at issue here could certainly be clearer -- and is not as clear as the corresponding language in the Terms and Conditions -- we nevertheless conclude that it unambiguously communicates that during the life of the manufacturer's warranty, anything covered by that warranty is the responsibility of the manufacturer. And because the "Court may look to extrinsic evidence outside the four corners of the agreement only where the term at issue is ambiguous on its face," Jill Stuart (Asia) LLC v. Sanei Int'l Co., No. 13 Civ. 1338, 2013 U.S. Dist. LEXIS

60883, at *9 (S.D.N.Y. Apr. 25, 2013), we do not consider the sales representative's statements when construing the contract. Accordingly, we hold that Staples did not breach the contract by requiring plaintiff to contact the manufacturer for assistance with his computer.

However, even assuming that the disputed language is ambiguous, and that Staples breached the contract by requiring plaintiff to seek assistance directly from the manufacturer, his claim still fails both because the breach was immaterial and because there were no damages. A breach is material in New York "if it goes to the root of the agreement between the parties and is so substantial that it defeats the object of the parties in making the contract." VFS Fin., Inc. v. Falcon Fifty LLC, No. 13 Civ. 3534, 2014 U.S. Dist. LEXIS 60227, at *10 (S.D.N.Y. Apr. 30, 2014) (internal quotation marks and brackets omitted); see also Restatement (Second) of Contracts § 241 (1981) (listing circumstances that are significant for determining materiality of a breach, including "the extent to which the injured party will be deprived of the benefit which he reasonably expected").

By purchasing the Protection Plan, plaintiff acquired the right to have his computer fixed without charge at any time during the first two years he owned it. Plaintiff was never denied this benefit. What he was denied was a referral to the

nearest authorized repair center when a problem arose with his computer in November 2012. Instead of telling plaintiff the location of an authorized repair center, a Staples employee told plaintiff to contact Hewlett Packard. But because plaintiff could have contacted Hewlett Packard and obtained this information -- as well as the repairs he was entitled to -- we cannot conclude that Staples's failure to properly direct him to an authorized repair center was a material breach of the contract.

Nor can we conclude that Staples's actions caused any damages. Having to contact Hewlett Packard is a minor inconvenience, not a cognizable harm. In order to claim damages, plaintiff would have to allege that after he contacted Hewlett Packard, it failed to fix his computer, or failed to do so free of charge, and Staples then refused to either fix the computer itself or reimburse him. However, plaintiff has alleged no such facts. In fact, at oral argument, plaintiff's counsel admitted that prior to initiating this action, plaintiff had not sought to have Hewlett Packard repair his computer. Tr. 14.

Therefore, even assuming that Staples breached the contract, plaintiff's claim cannot survive because the breach was immaterial and he has not properly alleged damages.

## B.  Breach of Express and Implied Warranties

Plaintiff also asserts a claim for breach of express and implied warranties.  Under New York law, any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  N.Y.U.C.C. § 2-313(1)(a).  An implied warranty is an unspoken and unwritten promise made by a seller to a buyer that the goods being sold are fit for the ordinary purposes for which they are to be used.  See N.Y.U.C.C. § 2-314.  It "arises in the absence of an express representation, and is imposed by operation of law."  Marcus v. AT&T Corp., 938 F. Supp. 1158, 1172 (S.D.N.Y. 1996).

In New York, express and implied warranties apply only to the sale of goods.  "[A]ll transactions where service predominates are indeed immune from express and implied warranty analysis."  B.C.F. Oil Ref. v. Consolidated Edison Co., 982 F. Supp. 302, 308 (S.D.N.Y. 1997) (internal quotation marks omitted); see also Stafford v. Int'l Harvester Co., 668 F.2d 142, 147 (2d Cir. 1981) (affirming dismissal of breach of express and implied warranties claims because the "underlying nature of the transaction was . . . that of a contract for repairs"); Milau Assoc., Inc. v. North Ave. Dev. Corp., 42 N.Y.2d 482, 487 (N.Y. 1977) ("The express warranty section [of

the U.C.C.] would therefore be no more applicable to a service contract than the code's implied warranty provisions."); Dobisky v. Rand, 248 A.D.2d 903, 905 (N.Y. App. Div. 1998) (noting that New York "does not recognize a cause of action in breach of warranty for the performance of services"); Aegis Prods., Inc. v. Arriflex Corp., 25 A.D.2d 639, 639 (N.Y. App. Div. 1966) ("Warranties are limited to sales of goods. No warranty attaches to the performance of a service. . . . No such right has ever been extended to include the consequence of a performance of a service.").

Plaintiff does not dispute that a service contract is not subject to a breach of warranty claim. See Pl. Opp. at 13-14. Rather, he argues that because his contract with Staples entitled him to the replacement of his computer if it could not be repaired, it was at least partially a contract for the sale of goods and therefore Staples may be held liable for the alleged breach of warranty.

Although "a hybrid service-sale transaction can give rise to a cause of action for breach of warranty," it may only do so "if the sales aspect of the transaction predominates and the service aspect is merely incidental." Stafford, 668 F.2d at 146 (internal quotation marks omitted). Moreover, "such a result has only been seen in cases where a retail seller provided some incidental services in connection with the sale."

Id.   Here, the Protection Plan was primarily a service contract.  Indeed, what plaintiff purchased was the right to be referred "to the nearest authorized repair center for service" if his computer broke.  It was only if the computer could not be repaired and Staples chose not to provide a cash settlement that he was entitled to a replacement.  See Farmer Decl., Ex A (promising a "[o]ne-time replacement or cash settlement if equipment cannot be repaired").  Regardless, plaintiff's claim is not that he was given a non-conforming replacement computer, but that Staples refused to provide the services promised under the Protection Plan.   Thus, because plaintiff's breach of warranty claim is predicated on a failure to perform services, it must be dismissed.[9]

### C.  N.Y. GBL §§ 349 and 350

Plaintiff asserts that Staples violated N.Y. GBL §§ 349 and 350 by promising services in Protection Plan brochures which it failed to provide during the first year.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the

---

[9] Even if the transaction between plaintiff and Staples could be construed as a sale of goods, plaintiff's breach of warranty claim would still fail for lack of damages, as discussed in Part II(A), supra.  See Marcus, 938 F. Supp. at 1172-73 ("[P]laintiffs' [breach of warranty] claim is insufficient because plaintiffs have suffered no damages as a result of any alleged breach.").

furnishing of any service in this state." To successfully assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (N.Y. 2012) (internal quotation marks omitted).

There is no question that the sale of Staples Protection Plans constituted "consumer-oriented conduct." Therefore, we are left to determine whether, in selling Protection Plans, Staples engaged in materially misleading conduct, and if so, whether that conduct caused plaintiff injury. "The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (N.Y. 1995)). Plaintiff argues that Staples misled him by hiding the fact that Protection Plan coverage overlapped in time with the manufacturer's warranty and that the manufacturer was responsible for all services covered under its warranty. Although a reasonable consumer reviewing the Protection Plan brochure -- specifically the language on the back cover that

"[t]he plan term is inclusive of manufacturer's warranty . . . and does not replace the manufacturer's warranty" –- would have understood that the manufacturer was responsible for services covered under its warranty during the first year of the Protection Plan term, it is possible that such a consumer, when confronted with contradictory statements by sales staff and a lack of access to the Terms and Conditions, would be confused.

However, even assuming that plaintiff was reasonably misled into believing that Staples was responsible for services covered under the manufacturer's warranty, he has failed to show how this caused him injury. See Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (N.Y. 2000) (holding that "a plaintiff must prove 'actual' injury to recover under the statute"). Indeed, regardless of whether it was Staples or the manufacturer that was responsible for servicing his computer, plaintiff received the benefit of his bargain: the ability to have his computer repaired or replaced if a problem arose during the first two years of ownership. The only difference was that when his computer experienced a problem during the first year, he had to contact Hewlett Packard to obtain the location of the nearest authorized repair center and the services to which he was entitled. Had he alleged that he contacted Hewlett Packard and was denied the services for which he had paid (i.e., if Hewlett Packard refused to fix his computer for free at the nearest

authorized repair center[10]), and Staples then refused to provide those services, he could claim injury. However, he has made no such allegations. Therefore, he has not alleged actual injury. See Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) (plaintiff failed to plead sufficient injury under § 349 because he "d[id] not claim that he did not receive adequate insurance coverage"); Sokoloff v. Town Sports Int'l, Inc., 778 N.Y.S.2d 9, 10 (N.Y. App. Div. 2004) (no injury alleged where plaintiff "d[id] not claim any kind of monetary loss other than payment of her membership fees" and "d[id] not claim that defendant failed to deliver the services called for in the contract"). Consequently, his N.Y. GBL §§ 349 and 350 claims are dismissed.

    D.  Unjust Enrichment

    Plaintiff's final claim, which he pleads in the alternative, is for unjust enrichment. However, this claim fails because, as both parties agree, plaintiff entered into a contract with Staples when he purchased the Protection Plan.[11] "Under New York law, quasi-contractual relief," such as unjust enrichment, "is unavailable where as here an express contract covers the subject matter." Karmilowicz v. Hartford Fin.

---

[10] This scenario could have occurred if, for example, plaintiff's computer required services covered under the Protection Plan but not under the manufacturer's warranty.
[11] Although the parties dispute the precise terms of their contract, they do not dispute its existence. See Compl. ¶ 43; Pl. Opp. at 8; Def. Br. at 10.

<u>Servs. Group</u>, 494 F. App'x. 153, 157 (2d Cir. 2012) (internal quotation marks, ellipses, and brackets omitted).

**CONCLUSION**

To summarize, plaintiff purchased a Staples Protection Plan entitling him to two years of "carry-in" service. The Plan brochure promised that if his computer required service during those two years, he would be referred to the nearest authorized repair center where he would then receive that service, or, alternatively, a one-time replacement or cash settlement. During the first year, he experienced a problem with his computer, and instead of referring him to the nearest authorized repair center, a Staples employee instructed him to contact Hewlett Packard, the manufacturer whose warranty was then in effect. Although this technically violated the "referral" provision of the brochure because the Staples employee did not look up the location of the nearest authorized repair center, it did not constitute a material breach of the contract or cause damages. Indeed, plaintiff easily could have called the Hewlett Packard customer service phone number, which he had, and asked for the location. He then could have taken his computer to be repaired under the manufacturer's warranty, but for some unknown reason he chose not to do so. In any event, had plaintiff carefully reviewed the brochure, he would have learned that Hewlett Packard was responsible for services

covered under its warranty, and that the sales representative's statements to the contrary were inaccurate. Moreover, these statements could not be relied on as a matter of law. Therefore, for the foregoing reasons, we grant Staples's motion to dismiss the Complaint.

Dated:     New York, New York
           June 27, 2014

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorneys for Plaintiff**

Jonathan Adler, Esq.
Meagan A. Farmer, Esq.
Mark C. Gardy, Esq.
Orin Kurtz, Esq.
James S. Notis, Esq.
Gardy & Notis, LLP
501 Fifth Avenue, Suite 1408
New York, NY 10017

**Attorney for Defendant**

Barry M. Kazan, Esq.
Thompson Hine LLP
335 Madison Avenue, 12th Floor
New York, NY 10017-3921

24